# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **LAURIE D. MCFADIN and** | § | |
| **STACY L. MCFADIN** | § | |
| **d/b/a Two Bar West,** | § | |
| | § | |
| **Plaintiffs,** | § | **CIVIL ACTION NO.** |
| **v.** | § | |
| | § | **SA-08-CV-0598 FB (NN)** |
| **LYNN GERBER and** | § | |
| **WILLIAM GERBER II** | § | |
| **d/b/a Foxy Roxy's, and** | § | |
| **d/b/a Eternal Perspective Handbags, and** | § | |
| **CONNIE GRENEMYER,** | § | |
| | § | |
| **Defendants.** | § | |

## REPORT AND RECOMMENDATION

**TO:    Honorable Fred Biery**
**United States District Court**

This report and recommendation addresses the motions pending in this case. I have

jurisdiction to enter this report and recommendation under 28 U.S.C. § 636(b) and the district

court's order referring all pretrial matters to me for disposition by order or to aid the district court

by recommendation where my authority as a Magistrate Judge is statutorily constrained.[1]  After

considering the pending motions and responses, I recommend dismissing this case for lack of

personal jurisdiction.

### Nature of the Case

Texas residents and plaintiffs Laurie and Stacy McFadin design and manufacture high-

end hand-made leather merchandise, including handbags, straps, luggage and other goods under

---

[1]Docket entry # 10.

the mark Two Bar West. The McFadins have sued Linda Gerber and her husband, William

Gerber II, and Connie Grenemyer, for trademark infringement, inducing and contributing to

trademark infringement, false designation of origin, palming off, unfair competition, civil

conspiracy in violation of the Trademark Act of 1946, and copyright infringement under federal

and state law.[2]

The Gerbers live in Colorado and design and manufacture products that the McFadins

characterize as knock-offs or copycats of Two Bar West products. Lynn Gerber is self-

employed, sells women's western wear and products, and does business as FoxyRoxy's.

FoxyRoxy's does not have a showroom, but maintains a website which provides a telephone

number and e-mail address by which potential customers can contact Lynn. In January 2008,

Lynn formed a Colorado limited partnership known as Eternal Perspective with her husband

William Gerber. William has no ownership interest in FoxyRoxy. Eternal Perspective produces

and markets western buffalo hide bags and other buffalo products in Colorado. The McFadins

characterize those handbags as knock-offs or copycats.

Grenemeyer lives in Colorado and works as a self-employed independent sales

representative. She represents lines of women's accessories for several different manufacturers

including the Gerbers' Eternal Perspective handbags. Grenemeyer maintains a showroom at the

Denver Merchandise Mart in Denver, Colorado. She travels to various trade shows throughout

her sales territory in the Rocky Mountain states and collects orders for represented merchandise.

Grenemeyer sold the McFadins' Two Bar West accessories for about ten years under a

commission agreement. The McFadins terminated their relationship with Grenemeyer on

---

[2]*See* docket entry # 11 (first amended complaint).

January 11, 2008.

Grenemeyer and the Gerbers have moved to dismiss this case for lack of personal jurisdiction, improper venue, insufficient service of process, and in the alternative, moved for a change of venue. Grenemeyer and the Gerbers filed two motions—the first motion based on the McFadins' original complaint[3] and the second based on the McFadins' amended complaint.[4] The second motions made the first motions moot. This report and recommendation addresses the second motions to dismiss (docket entry #s 35 and 46).

### Grenemeyer's Motion to Dismiss for Lack of Personal Jurisdiction

Grenemeyer has asked for dismissal of this case under Rule 12(b)(2) of the Federal Rules of Civil Procedure. Rule 12(b)(2) permits a defendant to move for dismissal for lack of personal jurisdiction. Grenemeyer maintains that the district court lacks personal jurisdiction because she lacks sufficient minimum contacts with Texas such that exercising personal jurisdiction over her would be unfair and unreasonable. Grenemeyer asserts that she has never operated or solicited any business in Texas, owns no property and has no agent for service of process in Texas, and has never been to Texas.

A federal district court may exercise personal jurisdiction over a defendant only to the extent permitted a state court under applicable state law if the state's long-arm statute applies, as interpreted by the state's courts, and if due process is satisfied under the fourteenth amendment to the United States Constitution.[5] "When a nonresident defendant presents a motion to dismiss

---

[3]Docket entry #s 15 & 21.

[4]Docket entry #s 35 & 46.

[5]*Allred v. Moore & Peterson*, 117 F.3d 278, 281 (5th Cir. 1997).

for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident. The court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery."[6] "[W]hen the jurisdictional issue is to be decided by the court on the basis of facts contained in affidavits, [the plaintiff] need only present facts sufficient to constitute a prima facie case of personal jurisdiction."[7] The court views the plaintiff's allegations as "true to the extent they are not contradicted by affidavits."[8] The court resolves "[a]ny genuine, material conflicts between the facts as established by the respective parties' appropriate affidavits, and other proper summary judgment type evidence" in favor of the plaintiff.[9]

Because the Texas long-arm statute has the same scope as the United States Constitution, the district court must determine whether exercising jurisdiction over Grenemeyer is consistent with the Due Process Clause.[10] "The Due Process Clause . . . permits the exercise of personal jurisdiction over a nonresident defendant when (1) that defendant has purposefully availed [herself] of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend 'traditional notions of fair play and substantial justice.'"[11] Minimum contacts is established

---

[6]*Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985).

[7]*WNS v. Farrow*, 884 F.2d 200, 203 (5th Cir. 1989).

[8]*Wyatt v. Kaplan*, 686 F.2d 276, 283 (5th Cir. 1982).

[9]*Jones v. Petty-Ray Geophysical Geosource*, 954 F.2d 1061, 1067 (5th Cir. 1992).

[10]*Alpine View v. Atlas Copco AB*, 205 F.3d 208, 214 (5th Cir. 2000).

[11]*Mink v. AAAA Development LLC*, 190 F.3d 333, 336 (5th Cir. 2000) (citations omitted).

through contacts that give rise to specific personal jurisdiction or general personal jurisdiction.[12] The McFadins base the court's jurisdiction over Grenemeyer on specific jurisdiction.[13]

"Specific jurisdiction exists when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action."[14] The specific jurisdiction analysis asks the following: "(1) Did the defendant have minimum contacts with the forum state—purposely directing its activities toward the forum state or purposely availing itself of the privilege of conducting activities therein? (2) Did the plaintiffs[] cause of action arise out of or result from the defendant's forum-related contacts? (3) Would the exercise of personal jurisdiction be reasonable and fair?"[15] A nonresident defendant has a minimum contact for the purposes of jurisdiction when she takes purposeful and affirmative action, the effect of which is to cause business activity, foreseeable by defendant, in forum state.[16]

The McFadins maintain that Grenemeyer is subject to personal jurisdiction in Texas because she entered into a commission agreement with Texas residents (the McFadins) knowing that a material part of the performance of the contract would occur in Texas. Under the agreement, Grenemeyer contacted the McFadins in Texas with orders for the McFadins'

---

[12]*Mink*, 190 F.3d at 336.

[13]Docket entry # 41, pp. 5-6.

[14]*Mink*, 190 F.3d at 336.

[15]*Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 625 (5th Cir. 1999).

[16]*See Miss. Interstate Express v. Transpo*, 681 F.2d 1003, 1007 (5th Cir. 1982) ("The rule developed by this circuit, however, is that when a nonresident defendant takes "purposeful and affirmative action," the effect of which is "to cause business activity, foreseeable by (the defendant), in the forum state," such action by the defendant is considered a "minimum contact" for jurisdictional purposes.") (citations omitted).

merchandise (the Two Bar West handbags) and the McFadins shipped the merchandise to the buyer. After a buyer paid for the merchandise, the McFadins mailed Grenemeyer a check for her commission.

Taking orders for the McFadins' merchandise was purposeful and affirmative action to cause business activity in Texas because the merchandise was located in Texas. Grenemeyer would have foreseen that taking an order for the McFadins' merchandise would cause business activity in Texas because receiving an order from Grenemeyer required the McFadins to ship merchandise. In some instances, Grenemeyer accepted orders from buyers from Texas who contacted Grenemeyer in her sales territory. Grenemeyer would have foreseen that taking orders from a Texas buyer would cause business activity in Texas because the McFadins would ship merchandise to the Texas buyer. Grenemeyer would have also foreseen that agreeing to sell the McFadins' merchandise required the McFadins to send sample merchandise from Texas to Grenemeyer in Colorado because she needed to show the merchandise in order to sell it. These contacts constitute minimum contacts for the McFadins' breach-of-contract claim. In that claim, the McFadins allege that Grenemeyer breached the commission agreement by refusing to return the sample bags.[17] The McFadins' breach-of-contract claim arose out of the minimum contacts because the McFadins provided the sample handbags to Grenemeyer under the commission agreement.

Once a plaintiff establishes purposeful contacts by the defendant, the defendant must show that the exercise of jurisdiction would be unfair. The defendant must "present a compelling

---

[17]Docket entry # 11, ¶¶ 237-51.

case that the presence of some other considerations would render jurisdiction unreasonable."[18] "[I]t must not be unfair or unreasonable to require the nonresident to defend the suit in the forum.'"[19] "In this reasonableness analysis, a court is to consider such factors as the extent of the defendant's purposeful interjection, the existence of an alternate forum, the burden on the defendant in appearing locally, the forum state's interest in adjudicating the dispute, the shared interest of all states involved in furthering their respective policies, the plaintiff's interest in obtaining convenient and effective relief and the interstate judicial system's interest in obtaining the most efficient resolution of controversies."[20] The Supreme Court has indicated that "the foreseeability that is critical to due process analysis is . . . [whether] the defendant's conduct and connection with the forum State are such that [s]he should reasonably anticipate being haled into court there."[21]

In their breach-of-contract claim, the McFadins complain that after notifying Grenemeyer about her termination, Grenemeyer refused to return inventory provided as showroom samples[22] and sold the inventory in breach of their agreement.[23] If these allegations are true, Grenemeyer would not reasonably expect to be haled into court in Texas because the alleged breach did not

---

[18]*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

[19]*Product Promotions v. Cousteau*, 495 F.2d 483, 497-98 (5th Cir. 1974).

[20]*Star Technology v. Tultex Corp.*, 844 F. Supp. 295, 297 (N.D. Tex.1993). *See Burstein v. St. Bar of Cal.*, 693 F.2d 511, 521 (5th Cir. 1982) (reciting same factors).

[21]*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

[22]Docket entry # 11, ¶¶ 93 & 237-51.

[23]*Id*. at ¶ 96.

occur in Texas.  Grenemeyer refused to return the sample bags in Denver after the McFadins arrived at Grenemeyer's showroom and demanded the handbags.  The alleged sale of sample handbags did not occur in Texas because Grenemeyer has never been in Texas.

Grenmeyer has not purposefully directed sales activity at Texas.  The McFadins initiated the commission agreement by visiting Grenemeyer in Colorado.[24]  The McFadins were motivated in part by Grenemeyer's presence outside of Texas.  Laurie McFadin attested that one of the main reasons Two Bar West hired Grenemeyer as its exclusive sales agent was she attended far-away trade shows.[25]  Consistent with that expectation, Grenemeyer traveled to trade shows in Arizona, Colorado, Idaho, Montana, New Mexico, Utah and Wyoming.[26]

In addition to working in other states, Grenemeyer had little incentive to direct her sales activity to Texas because she received a smaller sales commission for sales outside of her sales territory as compared to sales within her sales territory—6% commission compared to 12% commission.[27]  According to the McFadins' allegations, less than 4% of Grenemeyer's sales were to Texas buyers—an estimated $40,000.00[28] out of a total of $1,062,776.00.[29]  Nothing indicates Grenemeyer sought out those sales; instead, Texas buyers contacted Grenemeyer at the locations inside her sales territory.  Consequently, no basis exists for believing Grenemeyer purposefully

---

[24]Docket entry # 41, p. 6.

[25]Docket entry # 39, declaration of Laurie McFadin, ¶ 12.

[26]Docket entry # 35, appx. A, ¶¶ 11-12.

[27]Docket entry # 11, ¶ 87.

[28]Docket entry # 41, appx. 1, ¶ 23.

[29]Docket entry #41, appx. 3.

directed activity at Texas.

Having never been in Texas, defending herself against a breach-of-contract claim in Texas based on conduct that occurred in Colorado would be burdensome. If the breach-of-contract claim were tried in Texas, Grenemeyer would incur significant travel expenses for witnesses who observed her refusal to return the sample handbags. Grenemeyer produced a witness list showing that her witnesses reside and/or work in Colorado.[30] No one has identified a witness who observed Grenemeyer sell a sample bag.

If Grenemeyer breached the contract, Texas has an interest in maintaining the lawsuit because the dispute involves two of its citizens, but the same can be said for Colorado. Because Grenemeyer is a Colorado citizen, Colorado has an equal interest in adjudicating the breach-of-contract claim because both states have an interest in a contract dispute involving its citizens. In contrast to Grenemeyer, the McFadins would have little difficulty pursuing Grenemeyer in Colorado. They sought out Grenemeyer's representation by visiting her showroom in Denver and they operate a showroom in Denver.[31] Seeking relief in Texas would be more convenient for the McFadins, but they can obtain effective relief in Colorado. The judicial system's interest in obtaining the most efficient resolution of controversies can be met in litigating this case in either state. Under these circumstances, requiring Grenemeyer to defend herself in Texas against the breach-of-contract claim is unfair and unreasonable. Consequently, the court lacks specific personal jurisdiction over Grenemeyer as to the breach-of-contract claim.

The McFadins will likely object to this conclusion, relying on the Fifth Circuit's decision

---

[30]Docket entry # 35, appx. B.

[31]Docket entry # 11, ¶ 132.

in *Product Promotions v. Cousteau.*[32]  In *Product Productions*, the Fifth Circuit stated that in determining whether "a court's exercise of personal jurisdiction over a nonresident defendant is . . . consistent with due process," the court must "consider such things as the interest of the state in providing a forum for the suit, the relative conveniences and inconveniences to the parties, and basic equities."[33]  After applying those factors in *Product Promotions*, the Fifth Circuit concluded that the exercise of personal jurisdiction over the non-resident defendant did not offend traditional notions of fair play and substantial justice.  Since *Product Productions*, the Fifth Circuit refined its test for determining whether a court's exercise of jurisdiction over a nonresident defendant is consistent with due process, explaining that the determination is "highly specific to each case and not susceptible of easy determination."[34]  In *Burstein v. State Bar of California*, the Fifth Circuit reviewed the Supreme Court's precedents on determining fairness and settled on the factors discussed in this report and recommendation.[35]  Courts in this jurisdiction routinely apply those factors[36]  Consideration of an objection based on the factual

---

[32]495 F.2d 483 (5th Cir. 1974).

[33]*Product Promotions*, 495 F.2d at 498.

[34]*Burstein*, 693 F.2d at 520.

[35]*Id*. at pp. 520-21.

[36]*See Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 630 (5th Cir. 1999) ("When determining the fundamental fairness issue this court will normally examine (1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies."); *Coats v. Penrod Drilling Corp.*, 5 F.3d 877, 884-85 (5th Cir. 1993) ("Once minimum contacts are shown, a court should decide whether the assertion of jurisdiction would comport with fair play and substantial justice, considering the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's

similarities between this case and *Product Promotions* should recognize all of the factors courts

---

interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental substantive social policies."); *Friedrich Air Conditioning Co. v. Genie Air Conditioning and Heating,* No. SA-08-CA-541-XR, 2008 WL 3852644, at *3 (W.D. Tex. Aug. 15, 2008) ("In evaluating whether a defendant has presented such a case, courts look to '1) the burden on the nonresident defendant; 2) the interests of the forum state; 3) the plaintiff's interest in obtaining relief; 4) the interstate judicial system's interest in the most efficient resolution of controversies; and 5) the shared interests of the several states in furthering fundamental social policies.'") (internal citation omitted); *Ryerson v. Deschamps*, No. Civ.A. G-05-092, 2006 WL 126634, 2 (S.D. Tex. Jan. 13, 2006) ("In making this determination, the Court considers: '(1) the burden on the nonresident defendant of having to defend itself in the forum; (2) the interests of the forum state in the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in the most efficient resolution of controversies; and (5) the shared interests of the states in furthering fundamental social policies.'") (internal citation omitted); *Hartman v. Bago Luma Collections*, No. SA-03-CA-0465-XR, 2004 WL 1055709, at * 3 (W.D. Tex. Apr. 27, 2004) ("In this reasonableness analysis, a court is to consider such factors as the extent of the defendant's purposeful interjection, the existence of an alternate forum, the burden on the defendant in appearing locally, the forum state's interest in adjudicating the dispute, the shared interest of all states involved in furthering their respective policies, the plaintiff's interest in obtaining convenient and effective relief and the interstate judicial system's interest in obtaining the most efficient resolution of controversies."); *Americas Ins. Co. v. Engicon*, 894 F. Supp. 1068, 1072 (S.D. Tex. 1995) ("The burden on the Defendant . . . will be considered in light of other relevant factors: (1) the forum state's interest in adjudicating the dispute; (2) the Plaintiff's interest in obtaining convenient and effective relief; (3) the inter-state judicial system's interest in obtaining the most efficient resolution of controversies; and (4) the shared interest of the several states in furthering fundamental substantive social policies."); *Star Tech.*, 844 F. Supp. at 297 ("In this reasonableness analysis, a court is to consider such factors as the extent of the defendant's purposeful interjection, the existence of an alternate forum, the burden on the defendant in appearing locally, the forum state's interest in adjudicating the dispute, the shared interest of all states involved in furthering their respective policies, the plaintiff's interest in obtaining convenient and effective relief and the interstate judicial system's interest in obtaining the most efficient resolution of controversies."); *Crown Sterling v. Clark*, 815 F. Supp. 199, 202 (N.D. Tex. 1993) ("In this reasonableness analysis, a court is to consider such factors as the extent of the defendant's purposeful interjection, the existence of an alternate forum, the burden on the defendant in appearing locally, the forum state's interest in adjudicating the dispute, the shared interest of all states involved in furthering their respective policies, the plaintiff's interest in obtaining convenient and effective relief and the interstate judicial system's interest in obtaining the most efficient resolution of controversies.").

use in determining fairness, rather than the three factors considered in *Product Promotions*.[37]

The McFadins have also sued Grenemeyer for tort claims—conversion, civil conspiracy, misappropriation of trade secrets and confidential information, breach of confidential relationship, and breach of fiduciary duty. The McFadins allege that Grenemeyer misappropriated their trade secrets, including their copyrighted designs,[38] and conspired with the Gerbers to sell a handbag line that is identical to or confusingly similar to the Two Bar West products—that is, the Eternal Perspective products.[39] Because no question exists that the Gerbers—not Grenemeyer—produce the handbags, the tort allegations against Grenemeyer are based on her sales representation of Eternal Perspective handbags.

"When a nonresident defendant commits a tort within the state, or an act outside the state that causes tortious injury within the state, that tortious conduct amounts to sufficient minimum contacts with the state by the defendant to constitutionally permit courts within that state, including federal courts, to exercise personal adjudicative jurisdiction over the tortfeasor and the causes of actions arising from its offenses or quasi-offenses."[40] The McFadins cannot show that Grenemeyer committed a tort in Texas because she has never been to Texas. To show that Grenemeyer acted to cause tortious injury in Texas, the McFadins emphasize Grenemeyer's contacts under the commission agreement and the sale of Eternal Perspective handbags in Texas.

---

[37]The district court will observe that my analysis in regard to whether minimum contacts exists is fairly consistent with *Product Promotions*.

[38]Docket entry # 11, ¶ 103.

[39]*Id*. at ¶ 137. *See also* docket entry # 39, p. 3.

[40]*Guidry v. U.S. Tobacco Co*., 188 F.3d 619, 628 (5th Cir. 1999).

Grenemeyer's contacts under the commission agreement are irrelevant to this showing because those contacts are not related to the McFadins' tort claims, which allege conduct occurring after the agreement was terminated.

As evidence of the sale of Eternal Perspective bags in Texas, the McFadins produced an affidavit from a Texas retailer stating that she purchased Eternal Perspective bags from Eternal Perspective and FoxyRoxy for sale in her store in Texas, and opining that the average customer cannot distinguish the bags from the McFadins' bags.[41] The affiant stated that she purchased the handbags by contacting the Gerbers' sales representative, Jason Brockman. The affiant did not state where or how she purchased the Eternal Perspective handbags, but she characterized Brockman as the Gerbers' sales representative.[42] The affidavit does not show that Grenemeyer caused a tortious injury in Texas because it does connect Grenemeyer to the handbags.

The McFadins characterized Brockman as Grenemeyer's agent[43] and produced Brockman's affidavit to connect Grenemeyer to the sale of Eternal Perspective handbags in Texas. In the affidavit, Brockman attested that for a brief period of time in 2008, he and Grenemeyer helped each other by acting as sub-representatives for lines of merchandise that they independently represented.[44] Brockman explained that because he traveled more than Grenemeyer, he sometimes took some of the merchandise that Grenemeyer represented with him

---

[41]Docket entry # 39, affidavit of Nita Dixon.

[42]The screen-shot of the Eternal Perspective website included in the affidavit reflected the following: "To see our line, please visit Connie Grenemeyer at the Denver Merchandise Mart Room # 3674."

[43]Docket entry # 39, pp. 2, 7.

[44]Docket entry # 41, declaration of Jason H. Brockman, ¶ 4.

to shows in Arizona and New Mexico.[45]  He stated that he attended the Dallas Market Center merchandise trade show in March 2008, taking some Eternal Perspective handbags to the show.[46] He characterized the number of handbags as "a small fraction of the lines of merchandise that [he] exhibited at the show."[47]  Brockman stated that four Texas-based customers wrote orders for Eternal Perspective handbags, in amounts he considered as personal orders.[48]  Brockman attested that Grenemeyer contributed nothing to the cost of his trip and took no part in planning for his attendance at the show.[49]  He stated that after the show he wrote two other orders for Eternal Perspective handbags for Texas-based customers.[50]

Brockman's affidavit is insufficient to connect Grenemeyer to the sale of Eternal Perspective handbags in Texas because the affidavit does not establish Brockman as Grenemeyer's agent.  Both Grenemeyer and Brockman attested to being independent sales representatives,[51] not agents for one each other.  At most, the affidavit shows that Brockman sold a few Eternal Perspective handbags to Texas-based buyers, not that Brockman sold them on Grenemeyer's behalf or at Grenemeyer' request.  The McFadins rely on Brockman's affidavit as evidence Grenemeyer received commissions on the sale of Eternal Perspective handbags in

---

[45]*Id*. at ¶ 5.

[46]*Id*. at ¶ 7.

[47]*Id*. at ¶ 7.

[48]*Id*. at ¶ 9.

[49]*Id*. at ¶ 8.

[50]*Id*.

[51]Docket entry # 39, affidavit of Jason Brockman & docket entry # 35, appx. A.

Dallas,[52] but the affidavit establishes that Brockman—not Grenemeyer—received a sales commission for the Dallas sales.  The McFadins assert that Grenemeyer received a 2% sales commission on the sales,[53] but the affidavit does not say that.[54]

The McFadins produced a third affidavit from a second Texas retailer, stating that the affiant saw Brockman at the Dallas Mart Center and that Brockman told her that he represented Eternal Perspective handbags.[55]  The affiant opined that the Etrernal Persepctive handbags Brockman offered for sale were substantially the same design, decoration, pattern and logo as the Two Bar West handbags.[56]  The affidavit is insufficient to connect Grenemeyer to the sale of Eternal Perspectives handbags in Texas because it does not mention Grenemeyer.

If the McFadins' allegations are true, Grenemeyer acted somewhere other than Texas. Logically, if Grenemeyer resides and works in Colorado, misappropriation of the McFadins' trade secrets and conspiring with the Gerbers to sell knock-off/copycat handbags occurred in Colorado because that is where she and the Gerbers reside and Eternal Perspective handbags are produced.  If Grenemeyer is selling knock-off/copycat bags, she is selling those bags in places other than Texas because she does not travel to Texas.  Consequently, nothing shows that Grenemeyer caused tortious injury in Texas.  Without conduct causing tortious injury in Texas, no minimum contacts exist for the purpose of personal jurisdiction in regard to the McFadins'

---

[52]Docket entry # 39, p. 6.

[53]*Id*. at p. 8.

[54]Docket entry # 41, declaration of Jason Brockman, ¶ 12.

[55]Docket entry # 39, affidavit of Maryanne Vontor.

[56]*Id*. at ¶ 9.

tort claims.

In the event the district court considers the McFadins' evidence as sufficient to establish tortious injury in Texas, it would be still be unfair and unreasonable to require Grenemeyer to defend herself in Texas. The thrust of the McFadins' tort claims is that Eternal Perspective is selling knock-off/copycat handbags, not that Eternal Perspective is selling knock-off/copycat handbags in Texas. Having sought out Grenemeyer because she worked in areas far-away from Texas, it is disingenuous for the McFadins to focus on Texas to justify litigating their claims in Texas. Grenemeyer attested that the only orders she has written for Eternal Perspective handbags were for clients in Colorado, Montana, Wyoming, Arizona and New Mexico.[57] The McFadins have not shown differently. The district court does not have to accept the McFadins' allegation that Grenemeyer caused tortious injury in Texas as true where contradicted by Grenemeyer's evidence. The court lacks specific personal jurisdiction over Grenemeyer as to the tort claims.

Knowing the matter of minimum contacts for the tort claims is questionable, the McFadins have asked for leave to conduct discovery on specific personal jurisdiction.[58] With leave of court, the McFadins would depose Brockman, the Gerbers and Grenemeyer, issuing subpoenas for sales records for Eternal Perspective handbags. Although the district court may permit a plaintiff to conduct discovery for the purposes of establishing jurisdiction,[59] this is not complicated case requiring discovery to determine whether specific personal jurisdiction exists. No real question exists about whether Grenemeyer is selling Eternal Perspective handbags in

---

[57]Docket entry # 35, appx. A, ¶ 30.

[58]Docket entry # 39, p. 9.

[59]*See Williamson v. Tucker*, 645 F.2d 404, 414 (5th Cir. 1981).

Texas, whether she misappropriated the McFadins' trade secrets in Texas, or whether she conspired with the Gerbers about selling knock-off/copycat bags in Texas, because Grenemeyer has never been to Texas. Even if the McFadins could connect Grenemeyer to a sale of a Eternal Perspective handbag in Texas, a handful of sales is not a significant fact in determining specific personal jurisdiction.[60] The focus of Grenemeyer's sales is clearly not in Texas, as her sales territory does not include Texas. Where no real question exists about whether Grenemyer's activity in Texas, discovery would amount to little more than a fishing expedition.

**The Gerbers' Motion to Dismiss for Lack of Personal Jurisdiction**

The Gerbers also asked for dismissal of this case under Rule 12(b)(2). The Gerbers maintain that they lack minimum contacts with Texas because they do not operate in Texas and do not solicit sales Texas.[61] They argue that Lynn Gerber has been to Texas only once for recreation purposes and William Gerber has never been to Texas.

Because the McFadins have sued the Gerbers for various tort claims,[62] they must show that the Gerbers committed a tort in Texas or an act outside the state that caused tortious injury in Texas.[63] The McFadins cannot show that the Gerbers committed a tort in Texas because William

---

[60]*Wyatt v. Kaplan*, 686 F.2d 276, 284 (5th Cir. 1982) (indicating that the court upholds denials of discovery on questions of personal jurisdiction where the discovery would not add any significant fact).

[61]Docket entry # 46, p. 4.

[62]The McFadins sued the Gerbers for: federal false designation of origin or source, federal trade dress infringement, federal copyright infringement, Texas trademark infringement, common law unfair competition, common law palming off, federal false advertising, common law false advertising, civil conspiracy, and tortious interference.

[63]*See Guidry*, 188 F.3d at 628.

Gerber has never been to Texas[64] and Lynn Gerber has been to Texas only once for recreation purposes.[65]  The McFadins maintain the Gerbers have caused tortious injury in Texas because they sold Eternal Perspective handbags in Texas and sold the handbags to Texas-based buyers. The Gerbers rely heavily on Brockman's booth at the March 2008 Dallas Market Center merchandise trade show.[66]

"'[I]f a party is selling or trying to sell goods in a particular state, they are obviously seeking to avail themselves of the benefits of the forum and should not be allowed to shield themselves from the ultimate accountability that might follow.'"[67]  If the Gerbers used Brockman to sell infringing handbags in Texas, they caused tortious injury in Texas.  Brockman's affidavit attesting that the Gerbers contributed to the cost of his booth at the Dallas Market Center merchandise trade show and that Brockman sold a few Eternal Perspective handbags at the Dallas show makes a prima facie showing of tortious injury in Texas.  Having made this showing, the Gerbers must  "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."[68]

The Gerbers maintain that it would be unfair and unreasonable to force them to defend themselves in Texas because their conduct and connection with Texas is not such that they would

---

[64]Docket entry # 46, William Gerber's affidavit, ¶ 3.

[65]*Id*., Lynn Gerber's affidavit, ¶ 3.

[66]Docket entry # 43, p. 5.

[67]*Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 216 (5th Cir. 2000) (quoting appellant's brief).

[68]*See Rudzewicz*, 471 U.S. at 477.

reasonably anticipate being haled into court in Texas.[69]  The Gerbers live and work in Colorado.

Lynn has been to Texas once for recreation;[70] William has never been to Texas.[71]  Lynn

purchased a few Two Bar West handbags from the McFadins via telephone,[72] but that contact

does not make it fair or reasonable for her to defend herself in Texas.[73]  Otherwise, every

customer who purchased a product located in a different state would open herself up to litigation

in an inconvenient forum.  Eternal Perspective maintains a web-site viewable from Texas, but the

web-site is not directed at Texas or any other state.  Instead, the website instructs: "Call Lynn at

303-944-8381 [a Denver phone number] for wholesale information.  To see our line, please visit

Connie Grenemyer at the Denver Mercha[n]dise Mart Room #3674."[74]  Eternal Perspective has

made no sales to Texas wholesalers.[75]  The Gerbers market the Eternal Perspective handbags

primarily at shows in Colorado.[76]  "The handbags are manufactured in Colorado, orders are taken

in Colorado, invoices are sent from Colorado, and the bags are shipped from Colorado."[77]  Other

than Brockman's booth at the Dallas trade show, the Gerbers have done nothing to purposefully

---

[69]*See World-Wide Volkswagen Corp.*, 444 U.S. at 297.

[70]Docket entry # 46, Lynn Gerber's affidavit, ¶ 3.

[71]*Id.*, William Gerber's affidavit, ¶ 3.

[72]*Id.*, Lynn Gerber's affidavit, at ¶ 10.

[73]Lynn purchased a few other Two Bar West handbags from Grenemeyer at her Denver showroom.  Docket entry # 46, Lynn Gerber's affidavit, ¶ 8.

[74]Docket entry # 53, declaration of Nita Dixon, p. 3.

[75]*Id.*, Lynn Gerber's affidavit, ¶ 17 & William Gerber's affidavit, ¶ 10.

[76]*Id.*, Lynn Gerber's affidavit, ¶ 7.

[77]*Id.*, Lynn Gerber's affidavit, ¶ 18 & William Gerber's affidavit, ¶ 11.

direct sales at Texas.  Under these circumstances, the Gerbers would not reasonably anticipate being haled into court in Texas.

Residing and working in Colorado, defending themselves against the McFadins' tort claims based on a few handbags sales in Texas would be burdensome, especially considering that the thrust of the McFadins' claims is that the Gerbers are selling knock-off/copycat handbags—not that the Gerbers are selling knock-off/copycat handbags in Texas.  If the claims were tried in Texas, the Gerbers would incur significant expenses for witnesses involved in the design and manufacturing of the Eternal Perspective handbags to travel to Texas.  If the Gerbers conspired with Grenemeyer to produce knock-off/copycat handbags, that conduct occurred in Colorado because the Gerbers and Grenemeyer work and reside in Colorado.  If the Gerbers are manufacturing knock-off/copy handbags, they are doing so in Colorado because that is where the handbags are produced.  If the Gerbers are selling knock-off/copycat handbags, sales are initiated in Colorado because Colorado is where the Gerbers show the handbags and accept orders.

If the Gerbers are infringing on the Two Bar West designs, Texas has an interest in maintaining the lawsuit because the dispute involves the copyrighted designs of its citizens, but the same can be said for Colorado.  Because the Gerbers are Colorado citizens, Colorado has an equal interest in adjudicating the McFadins' tort claims because Colorado has an interest the designs of its citizens—here, the Eternal Perspective handbags.  In contrast to the Gerbers, the McFadins would have little difficulty pursuing the Gerbers in Colorado.  They travel to Colorado and operate a showroom in Denver.[78]  Seeking relief in Texas would be more convenient for the McFadins, but they can obtain effective relief in Colorado.  The judicial system's interest in

---

[78]Docket entry # 11, ¶ 132.

obtaining the most efficient resolution of controversies can be met in litigating this case in either state. Under these circumstances, requiring the Gerbers to defend themselves in Texas against the McFadins' tort claims is unfair and unreasonable. Consequently, the court lacks specific personal jurisdiction over the Gerbers.

The McFadins will likely object to this conclusion, relying on factual similarities to *Product Promotions*, but that decision does not control here. Like the McFadins, the appellant in *Product Promotions* did not make a prima facie showing of minimum contacts for its tort causes of action.[79] Thus, no reason existed to apply the *Product-Productions* factors to determine whether exercising jurisdiction over the defendant in regard to the tort claims offended traditional notions of fair play and substantial justice. If the district judge finds minimum contacts, my analysis for whether exercising jurisdiction over the Gerbers is fair and reasonable applies all of the appropriate factors.

As with Grenemeyer, the McFadins have asked for leave to conduct discovery on specific personal jurisdiction.[80] With leave of court, the McFadins would depose Brockman, the Gerbers and Grenemeyer, issuing subpoenas for sales records for Eternal Perspective handbags. The district court may permit a plaintiff to conduct discovery for the purposes of establishing jurisdiction,[81] but the facts are not so complicated in this case that discovery is required to determine whether specific personal jurisdiction exists. The thrust of the McFadins's tort claims against the Gerbers is about handbag sales, not handbag sales in Texas. Even if the Gerbers have

---

[79]*Product Promotions*, 495 F.2d at 491.

[80]Docket entry # 53, pp. 4-7.

[81]*See Williamson*, 645 F.2d at 414.

sold handbags to Texas-based retailers, those sales are not what really matters in this case—what matters is whether the Gerbers are infringing on the McFadins' designs. If the Gerbers sold some handbags to Texans, they sold the handbags in Colorado. Discovering more sales in Texas is not a significant fact in determining specific personal jurisdiction.[82] Where the Gerbers' sales activity focuses on Colorado, discovery would not help determine where this dispute is properly adjudicated.

## Recommendation

The court lacks specific personal jurisdiction over the McFadins' breach-of-contract claim because it would be unfair and unreasonable to require Grenemeyer to defend herself against that claim in Texas. It would be unfair and unreasonable for Grenemeyer to defend herself in Texas because the alleged breach of contract did not occur in Texas and because Grenemeyer has not purposefully directed sales activity at Texas. The court lacks specific personal jurisdiction over Grenemeyer as to the tort claims because nothing connects Grenemeyer to a tortious injury in Texas. Even if the McFadins' evidence is sufficient to establish tortious injury in Texas, it would be be unfair and unreasonable to require Grenemeyer to defend herself in Texas because of a handful of handbag sales in Texas, where the thrust of the McFadins' tort claims target all sales of Eternal Perspective handbags. For these reasons, I recommend granting Grenemeyer's motion to dismiss for lack of personal jurisdiction (docket entry # 35), denying the request for discovery, and dismissing this case as to Grenemeyer. If the district court grants the motion, it can deny Grenemeyer's motion to change venue (also docket

---

[82]*Wyatt*, 686 F.2d at 284 (indicating that the court upholds denials of discovery on questions of personal jurisdiction where the discovery would not add any significant fact).

entry # 35) as moot.

The court lacks specific personal jurisdiction over the Gerbers because their conduct and connection with Texas is not such that they would reasonably anticipate being haled into court in Texas. The Gerbers focus their sales of Eternal Perspective handbags on Colorado. The sale of a few handbags in Texas or to Texas-based customers is insufficient to cause the Gerbers to reasonably anticipate being haled into court in Texas. For these reasons, I recommend granting the Gerbers' motion to dismiss for lack of personal jurisdiction (docket entry # 46), denying the request for discovery, and dismissing this case as to the Gerbers. If the district court grants the motion, it can deny the Gerbers' motion to change venue (also docket entry # 46) and the McFadins' motion for substituted service of process (docket entry # 47) and motion to amend their complaint (docket entry # 57) as moot.

### Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this report and recommendation must be filed within 10 days after being served with a copy of same, unless this time period is modified by the district court.[83] Such party shall file the objections with the clerk of the court, and serve the objections on all other parties and the magistrate judge. A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous,

---

[83] 28 U.S.C. §636(b)(1); FED. R. CIV. P. 72(b).

conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.[84]  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this memorandum and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.[85]

**SIGNED** on November 6, 2008.


*Nancy Stein Nowak*

NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE

---

[84]*Thomas v. Arn*, 474 U.S. 140, 149-152 (1985); *Acuña v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000).

[85]*Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).