IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| LAURIE D. MCFADIN and | § | |
| STACY L. MCFADIN | § | |
| d/b/a Two Bar West, | § | |
| Plaintiffs | § | |
| v. | § | CIVIL ACTION SA-08-CV-0598 FB |
| ETERNAL PERSPECTIVES, LLC, | § | |
| LYNN GERBER and | § | |
| WILLIAM GERBER II | § | |
| d/b/a Foxy Roxy's, and | § | |
| d/b/a Eternal Perspective Handbags | § | |
| Defendants | § | |

## THIRD AMENDED COMPLAINT

Plaintiffs, LAURIE and STACY MCFADIN d/b/a TWO BAR WEST ("Plaintiffs") file this THIRD AMENDED COMPLAINT seeking a judgment and injunctive relief against ETERNAL PERSPECTIVES, LLC, LYNN GERBER and WILLIAM GERBER II, d/b/a FOXY ROXY and ETERNAL PERSPECTIVE HANDBAGS for direct, inducing and contributing to trademark infringement, false designation of origin, palming off, unfair competition, civil conspiracy in violation of the Trademark Act of 1946, 15 U.S.C. §§ 1051 et seq., and copyright infringement in violation of 17 U.S.C. §§ 501 et seq. and under the statutes and common law of Texas.

## PARTIES

1.      Plaintiff, Stacy McFadin, is a citizen and resident of the state of Texas, doing business as TWO BAR WEST, a Texas general partnership, having its principal place of business at 1850 HWY 1796, Hondo, Texas 78861.

2.      Plaintiff, Laurie McFadin, is a citizen and resident of the state of Texas, doing business as TWO BAR WEST, a Texas general partnership, having its principal place of business at 1850 HWY 1796, Hondo, Texas 78861.

3.      Defendant ETERNAL PERSPECTIVES, LLC is a limited liability company in Colorado with a principal street address of 7345 Routt St., Arvada, CO 80005.

4.      Defendant, ETERNAL PERSPECTIVES, LLC can be served through its registered agent J. Brent Garfield.

5.      Defendant LYNN GERBER, is a partner, doing business as ETERNAL PERSPECTIVE HANDBAGS and FOXY ROXY with principal place of business in Arvada, Colorado.

6.      Defendant, Lynn Gerber, can be served at her place of business at 7345 Routt St., Arvada, CO 80005.

7.      Defendant WILLIAM GERBER II, is a partner, doing business as ETERNAL PERSPECTIVE HANDBAGS and FOXY ROXY with principal place of business in Arvada, Colorado.

8.      Defendant, William Gerber II, can be served at his place of business at 7345 Routt St., Arvada, CO 80005.

9.      Plaintiffs reside and are doing business in the San Antonio Division of the Western District of Texas.

### JURISDICTION AND VENUE

10.     Jurisdiction of this suit is based on the Federal Trademark Act, a/k/a Lanham Act, as amended, 15 U.S.C. §§ 1051 *et seq.*, and U.S. Copyright Act, 17 U.S.C. §§ 501 et seq., and Texas statutes and laws on trademarks, trade names, unfair competition, deceptive trade practices, false advertising and dilution and on 28 U.S.C. §§ 1331, 1338, 2201, and 2202.

11.     The suit is based on a Federal question and statute, namely 15 U.S.C. § 1051 et seq.

12.     Plaintiffs' principal business that is located in Western District of Texas.

13.     Plaintiffs' reside in Western District of Texas.

14.     The Fifth Circuit has determined that personal jurisdiction exists in Texas against the Gerber Defendants for this case.

15.     Plaintiffs' merchandise, which comprises fashion leather handbags, leather goods and accessories, is manufactured and warehoused in Texas.

16.     Lynn and William Gerber jointly are members of and own and control Eternal Perspectives, LLC.

17.     Lynn and William Gerber head up the entire operations of Eternal Perspectives, LLC.

18.     Lynn and William Gerber participated in and directed Eternal Perspectives, LLC's efforts to knock off Plaintiffs' product and engage in trademark infringement, trade dress infringement, unfair competition and copyright infringement and other complaint-of activities.

19.     Lynn and William Gerber are the moving, active, conscious force behind Eternal Perspective, LLC's complained-of activities.

20.     The Gerber Defendants are personally liable as individuals because they engaged in intentionally tortious behavior for their direct personal gain.

21.     The corporate shield of their limited liability company does not protect the Gerber Defendants from their own intentional torts.

22.     The corporate shield of their limited liability company does not protect the Gerber Defendants in any way because they have not taken the steps to provide notice to the public of the existence of their LLC.

23.     The Gerber Defendants have not provided notice to the public of the existence of their LLC on their websites www.foxyroxys.com and www.eternalperspectivehandbags.com.

24.     Defendant Eternal Perspectives, LLC is vicariously liable under the doctrine of respondeat superior because the Gerber Defendants were acting for the LLC when they committed the complained of acts.

25.     Defendants' merchandise, which comprises fashion leather handbags, leather goods and accessories, is sold in Texas.

26.     Defendants purchased merchandise from the Texas Plaintiffs which was shipped from Texas to the Defendants.

27.     Defendants entered into a contract with Plaintiffs to purchase Plaintiffs' merchandise that was performable in Texas.

28.     The merchandise of Plaintiffs that Defendants purchased was manufactured, shipped and invoiced from Texas and Defendants paid for Plaintiffs' merchandise in Texas.

29.     The Gerber Defendants are married and are co-owners of the business which sells the Defendants infringing merchandise, which is the subject of this suit.

30.     The Gerber Defendants' business has been organized into a Limited Liability Company called Eternal Perspectives, LLC.

31.     Defendants operate the website www.foxyroxys.com through which they advertise their infringing handbags.

32.     Lynn and William Gerber own the domain name and website for www.foxyroxys.com.

33.     The website www.foxyroxys.com is a website through which Defendants exchange information with residents in Texas.

34.     The website www.foxyroxys.com is available to consumers in every state in the United States, including Texas.

35.      Defendants also make information about wholesale purchasing available through their website www.eternalperspectivehandbags.com.

36.     Lynn and William Gerber own the domain name and website for www.eternalperspectivehandbags.com.

37.     Defendants have engaged in repeated online contacts with Texas residents over the internet.

38.     Defendants use commissioned sales representatives to travel to Texas markets to represent and sell their handbags.

39.     Defendants sent a sales representative, Mr. Jason Brockman, to the March 2008 Dallas, Texas market to sell their handbags to Texas wholesale buyers.

40.     Mr. Brockman made at least 6 sales of Defendants' handbags to Texas businesses on behalf of the Defendants.

41.     As is customary in the business, Mr. Brockman displayed the alleged infringing handbags at the Dallas market and took the orders from Texas wholesale buyers for Defendants.

42.     Defendants filled the orders with Texas wholesale buyers and Mr. Brockman and his subagent, Connie Grenemyer, were paid a commission by Defendants for their sales in Texas.

43.     Defendants have infringed, induced the infringement and/or contributed to the infringement of Plaintiffs' trademarks in Texas.

44.     Defendants have infringed, induced the infringement and/or contributed to the infringement of Plaintiffs' trade dress in Texas.

45.    Defendants have infringed, induced the infringement and/or contributed to the infringement of Plaintiffs' copyrights in Texas.

46.    Defendants have engaged in unfair competition with Plaintiffs' in Texas.

47.    Defendants have engaged in false advertising against Plaintiffs' in Texas.

48.    Defendants have done and regularly do business in Texas.

49.    Defendants have done and regularly do business in the Western District of Texas.

50.    Venue is proper in the Western District of Texas pursuant to 28 U.S.C. §§ 1391.

51.    Furthermore, a substantial portion of the events giving rise to the causes of action described herein have occurred in and/or are continuing to occur in Hondo, Texas, located in the San Antonio Division of the Western District of Texas.

52.    Defendants have done business throughout Texas including the Western District of Texas.

53.    This suit is also based on the laws of the United States and the Federal Declaratory Judgment Act and the laws of Texas under pendent jurisdiction.

54.    Jurisdiction of the related claims for common law trademark infringement and unfair competition is based upon the provisions of 28 U.S.C. § 1338(b) and pendent jurisdiction.

55.    The Court has jurisdiction on Plaintiff's common law claim for breach of contract under the doctrine of pendent jurisdiction and 28 U.S.C. § 1367.

56.    An actual case or controversy exists between Plaintiffs and Defendants.

57.    A ruling by this Court will settle all disputes between Plaintiffs and Defendants.

## BACKGROUND

58.    Plaintiffs design and manufacture high-end hand-made leather merchandise including purses, straps, luggage, and other leather goods.  Plaintiffs maintain a strong and favorable reputation in the industry.

59.    Plaintiffs utilize a national network of sales representatives to market their products to high-end retail stores.

60.    Plaintiffs' sell their products to customers who sell high-end western wear through a retail outlet.

61.    Plaintiffs' have purposefully avoided business with discount retailers to maintain the image and price of their quality products.

62.    Plaintiffs do not utilize online marketing or sell their products through online sites as a measure to protect the confidential copyrighted designs of their products and to control the authorized sellers of the products.

63.    Plaintiffs utilize a distinctive stylized notched cross with ovals as an identifier of origin on their high-end leather goods and have done so since August 17, 2002 or before.

64.    Plaintiffs utilize a distinctive stylized notched bar with ovals as an identifier of origin on their high-end leather goods and have done so since August 31, 2002 or before.

65.    Plaintiffs have acquired common law rights in both the distinctive stylized notched bar with ovals and distinctive stylized notched cross with ovals marks as well as their trade dress under the Lanham Act.

66.    Plaintiffs' trade dress has garnered protection under the Lanham Act due to its non-functional characteristics, use in interstate commerce and distinctive characteristics.

Plaintiffs' trade dress has acquired secondary meaning indicating the origin of products as that of Two Bar West.

67.     Plaintiffs are the owners of U.S. Trademark Registration No. 3,594,361, a stylized notched cross with ovals design mark, for leather handbags; leather purses; leather straps and luggage with a date of first use of August 31, 2002.

68.     Plaintiffs are the owners of U.S. Trademark Registration No. 3,585,881, a T-BAR-W design mark for leather handbags; leather purses; leather straps and luggage with a date of first use of June 30, 1998.

69.     Plaintiffs are the owners of U.S. Trademark Registration No. 3,583,104, a stylized notched bar with ovals design mark leather handbags; leather purses; leather straps and luggage with a date of first use of August 31, 2002.

70.     Plaintiffs are the owners of U.S. Trademark Registration No. 3,553,405 for TWO BAR WEST for leather handbags; leather purses; leather straps and luggage with a date of first use of June 30, 1998.

71.     Plaintiffs are the owners of Texas Trademark Registration No. 800986289 for a stylized notched bar with ovals design mark for leather goods, namely, purses, straps and luggage with a date of first use of August 31, 2002.

72.     Plaintiffs are the owners of Texas Trademark Registration No. 801167273 for a stylized notched cross with ovals design mark for leather goods, namely, purses, straps, and luggage with a date of first use of August 31, 2002.

73.     High-end retailers will refuse to stock and sell high-end name brand goods if the same name brand goods are handled by discounters or online internet retailers.

74.     Allowing discounters and online internet retailers to handle name brand goods devalues and degrades the value of the name brand.

75.     Defendants own the business known Foxy Roxy's.

76.     Defendants, through their business Foxy Roxy's, sold a very small number of Plaintiffs' goods, beginning in 2006.   Defendants only purchased approximately 74 leather items from Plaintiffs.

77.     Defendants' business is based on internet sales and sales made at trade shows.

78.     Defendant Lynn Gerber is the administrative contact for the domain registration of www.foxyroxys.com that was created January 16, 2006.

79.     The website, www.foxyroxys.com is a website allowing customers throughout the country to purchase Defendants' infringing handbags online.

80.     After Plaintiffs determined that Defendants only operated an internet store, Plaintiffs decided to not do business with Defendants.

81.     The business relationship between Plaintiffs and Defendants terminated in January 2008.

82.     Despite cancellation of all orders and termination of any business relationship with Plaintiffs in January 2008, Defendants represented to the public that they were a dealer of Plaintiffs' goods through the website www.foxyroxys.com.

83.     Defendants, despite cancellation of all orders and termination of any business relationship in January 2008, maintains meta tags in the website www.foxyroxys.com so that her website will appear when conducting searches for "Two Bar West," "Two Bars West," "Two Bar West purse," and "Two Bar West handbags."

84.     Defendants made literally false statements in the meta tags of their website

www.foxyroxys.com.

85.      The public would have understood that statements in the meta tags of their website www.foxyroxys.com by stating "Foxy Roxy's Cowgirl Boutique sells Two Bar West purses" to mean that Defendants were authorized dealers of Plaintiffs goods.

86.      After termination of any business relationship, Defendants made a false statement that Plaintiffs had poor customer service and that was the reason for no longer carrying Plaintiffs' product line.

87.       Defendants own the business known as Eternal Perspective.

88.      The business known as Eternal Perspective was set up by Defendants to sell knock-offs of Plaintiffs' products at wholesale.

89.      At least as early as March 2008, Defendants began selling confusingly similar or identical goods to that of the Plaintiffs' goods.

90.      Defendants sell the knockoffs of Plaintiffs' goods through their web sites, http://www.eternalperspectivehandbags.com and http://www.foxyroxys.com.

91.      Defendant Lynn Gerber serves as the administrative contact for domain registration of www.eternalperspectivehandbags.com that was created January 11, 2008.

92.       Defendants made virtually identical copies of all of Plaintiffs' goods.

93.       Defendants copied Plaintiffs' trade dress.

94.       Defendants' goods copied Plaintiffs' goods right down to the unusual hang tags and the metal button on Plaintiffs' goods.

95.      Eternal Perspective handbags duplicate Plaintiffs' bar and cross trademarks.

96.      Eternal Perspective handbags have identical or confusingly similar trade dress to that of the Plaintiffs' products.

97.     Plaintiffs first became aware of the confusingly similar and infringing handbags made by Eternal Perspective Handbags after some of Plaintiffs' customers made comments to the Plaintiffs about the similarity of Defendants' goods to those of Plaintiffs' goods.

98.     The Gerber Defendants state on their Foxy Roxy website:

**"Two Bar West Handbags**
We have closed out all of our Two Bar West Products ..... Replacing with our fabulous Artisan Buffalo handbags by Eternal Perspective."

99.     Defendants display a single Two Bar West Handbag on their web site.

100.    The display of Plaintiffs' handbag and trademark on Defendants' web site is a scam to attract Plaintiffs' customers to Defendants' web site and then do a bait and switch.

101.    Defendants are not in the business of selling Plaintiffs' handbags and are merely using Plaintiffs' trademark to mislead and deceive customers of Plaintiffs into believing that Defendants are dealers of Plaintiffs' handbags and can supply them.

102.    Defendants' purse product line is identical or confusingly similar to Plaintiffs' products.

103.    Defendants Eternal Perspectives, LLC, Lynn Gerber, and William Gerber have conspired to sell infringing and confusingly similar products to that of the Plaintiffs.

104.    Plaintiffs are the owners of U.S. Copyright registration No. VA 1-140-426 dated April 29, 2002.

105.    Plaintiffs are the owners of U.S. Copyright registration No. VAu 751-438 dated July 9, 2007.

106.    The subject work of the registrations listed in above paragraphs, hereinafter referred to as the "Copyrights," or "Works" contains material wholly original with Plaintiffs that is copyrightable subject matter under the laws of the United States of America.

107.    Plaintiffs are the owner of the copyright in the Works.

108.    Plaintiffs are the only persons or entities in the United States that have the right to the world-wide right of all common law and statutory copyrights, renewals and extensions of the Copyright, to reproduce any works based thereon in copies and phonorecords, prepare any derivative works based on the works, distribute copies or phonorecords to the public by sale or other transfer of ownership or by rental, lease or lending, perform the works publicly and display the works publicly and all past, present and future causes of action and right to damages for past infringement thereof.

109.    Plaintiffs have produced and sold the work embodying the Copyright in compliance with the provisions of the Copyright Act of 1976 and all other laws governing copyright.

110.    Defendants have made and/or marketed copies of the copyrighted work and have caused others to make copies of the copyrighted works.

111.    Defendants have no ownership rights in or license under the copyrighted Works.

FEDERAL TRADEMARK INFRINGEMENT

112.    Plaintiffs repeat and reallege all of the factual allegations contained herein as though the same were set forth again at length herein.

113.    Defendants have knowingly used in commerce a reproduction, counterfeit, copy, or colorable imitation of Plaintiffs' federally registered TWO BAR WEST mark.

114.    By using Plaintiffs' TWO BAR WEST mark in the metatags of its website, Defendants' websites are shown in a search for "TWO BAR WEST."

115.    This results in initial interest confusion.

116.    Defendants' use in commerce of the TWO BAR WEST trademark has been in connection with the sale, offering for sale, distribution, or advertising of Defendants' goods.

117.    Defendants' use in commerce of the TWO BAR WEST trademark is likely to cause confusion of consumers or to cause mistake, or to deceive consumers desiring to buy the Plaintiffs' genuine handbags.

118.    Defendants' use in commerce of the TWO BAR WEST trademark is a violation of the Lanham Act.

119.    Defendants' use in commerce of the TWO BAR WEST trademark has caused loss of goodwill and profits to Plaintiffs, has damaged the reputation of genuine TWO BAR WEST goods, and has injured the public by causing confusion, mistake, and deception.

120.    Defendants use in commerce of the TWO BAR WEST trademark is with the knowledge and intent that such use causes confusion, mistake, and deception to the purchasing public.

121.    Defendants have knowingly used in commerce a reproduction, counterfeit, copy, or colorable imitation of Plaintiffs' federally registered stylized notched cross with ovals and stylized notched bar with ovals design marks without the consent of Plaintiffs.

122.    Defendants' use in commerce of the stylized notched cross with ovals and stylized notched bar with ovals trademarks has been in connection with the sale, offering for sale, distribution, or advertising of Defendants' goods.

123.    Defendants' use in commerce of the stylized notched cross with ovals and stylized notched bar with ovals design marks are likely to cause confusion of consumers, or to cause mistake, or to deceive consumers desiring to buy the Plaintiffs' genuine handbags

124.    Defendants' use in commerce of the stylized notched cross with ovals and stylized notched bar with ovals design marks are a violation of the Lanham Act.

125.    Defendants' use in commerce of the stylized notched cross with ovals and stylized notched bar with ovals and TWO BAR WEST trademarks has caused loss of goodwill and profits to Plaintiffs, has damaged the reputation of Plaintiffs' genuine handbags, and has injured the public by causing confusion, mistake, and deception.

126.    Defendants have used the stylized notched cross with ovals and stylized notched bar with ovals and TWO BAR WEST trademarks in commerce with the knowledge and intent that such use causes confusion, mistake, and deception to the purchasing public.

127.    Pursuant to 15 U.S.C. § 1116(a), Plaintiffs are entitled to preliminary and permanent injunctive relief to prevent Defendants' continuing use in commerce of the stylized notched cross with ovals and stylized notched bar with ovals and TWO BAR WEST trademarks.

128.    Pursuant to 15 U.S.C. § 1117(a), Plaintiffs are entitled to damages for Defendants' use in commerce of the stylized notched cross with ovals and stylized notched bar with ovals and TWO BAR WEST trademarks, an accounting of profits made by Defendants, and recovery of Plaintiffs' costs of this action.

129.    The intentional use of the stylized notched cross with ovals and stylized notched bar with ovals and TWO BAR WEST trademarks by Defendants makes this an exceptional case entitling Plaintiffs to an award of three times its actual damages and recovery of its reasonable attorneys' fees.

130.    Plaintiffs are also entitled to prejudgment interest on their recovery.

**FEDERAL FALSE DESIGNATION OF ORIGIN OR SOURCE**

131.    Plaintiffs repeat and reallege all of the factual allegations contained herein as though the same were set forth again at length herein.

132.    Defendants have knowingly used in commerce a reproduction, counterfeit, copy or colorable imitation of Plaintiffs' stylized notched bar with ovals trademark without the consent of Plaintiffs.

133.    Plaintiffs have a valid and inherently distinctive and protected trademarks in the stylized notched bar with ovals trademark which identifies the source of Plaintiffs' products.

134.    Defendants have knowingly used in commerce a reproduction, counterfeit, copy or colorable imitation of Plaintiffs' stylized notched cross with ovals trademark without the consent of Plaintiffs.

135.    Plaintiffs have a valid and inherently distinctive and protected trademark in the stylized notched cross with ovals trademark which identifies the source of the product.

136.    Defendants have knowingly used in commerce a reproduction, counterfeit, copy or colorable imitation of Plaintiffs' TWO BAR WEST trademark without the consent of Plaintiffs.

137.    Plaintiffs have a valid and inherently distinctive and protected trademark in the TWO BAR WEST trademark which identifies the source of the product.

138.    Defendants have knowingly used in commerce a reproduction, counterfeit, copy or colorable imitation of Plaintiffs' trademarks and trade dress without the consent of Plaintiffs.

139.    Plaintiffs have an inherently distinctive and non-functional trademarks and trade dress which identifies the source of Plaintiffs' products.   Plaintiffs have acquired secondary meaning in the overall trade dress of Plaintiffs products

140.    Defendants' use in commerce of Plaintiffs' stylized notched bar with ovals trademark, stylized notched cross with ovals trademark, TWO BAR WEST trademark and trade dress has been in connection with the sale, offering for sale, distribution, or advertising of Defendants' goods.

141.    Defendants' use in commerce of Plaintiffs' stylized notched bar with ovals trademark, stylized notched cross with ovals trademark, TWO BAR WEST trademark and trade dress are likely to cause confusion of consumers, or to cause mistake, or to deceive consumers desiring to purchase Plaintiffs' genuine goods regarding the source and quality of the services or association with Defendants.

142.    Plaintiffs' stylized notched bar with ovals trademark, stylized notched cross with ovals trademark, TWO BAR WEST trademark and trade dress symbolize substantial goodwill of Plaintiffs resulting in significant sales of its high-quality genuine products.

143.    Defendants' use of Plaintiffs' stylized notched bar with ovals trademark, stylized notched cross with ovals trademark, TWO BAR WEST trademark, and trade dress are likely to cause confusion, or to cause mistake, or to deceive as to the origin or source of Defendants' goods.

144.    Defendants' use in commerce of Plaintiffs' stylized notched bar with ovals trademark, stylized notched cross with ovals trademark, TWO BAR WEST trademark, and trade dress are likely to cause consumers to believe that Plaintiffs' and Defendants' goods come from the same origin or source, or that Plaintiffs sponsor or approve the goods of Defendant, or that

Plaintiffs and Defendant are somehow affiliated, connected or associated with one another when in fact they are not.

145.    Defendants' use in commerce of Plaintiffs' stylized notched bar with ovals trademark, stylized notched cross with ovals trademark, TWO BAR WEST trademark, and trade dress has caused loss of goodwill and profits to Plaintiffs, has damaged the reputation of Plaintiffs' genuine goods, and has injured the public by causing confusion, mistake, and deception.

146.    Defendants have used Plaintiffs' stylized notched bar with ovals trademark, stylized notched cross with ovals trademark, TWO BAR WEST trademark, and trade dress in commerce with the knowledge and intent that such use cause confusion, mistake, and deception to the purchasing public.

147.    The intentional use of Plaintiffs' stylized notched bar with ovals trademark, stylized notched cross with ovals trademark, TWO BAR WEST trademark, and trade dress by Defendants make this an exceptional case entitling Plaintiffs to an award of three times its actual damages and recovery of its reasonable attorneys' fees.

148.    Plaintiffs are also entitled to prejudgment interest on its recovery.

149.    The actions of Defendant constitute unfair competition with Plaintiffs in violation of the federal Lanham Act, 15 U.S.C. § 1125(a).

150.    Pursuant to 15 U.S.C. §1117(a), Plaintiffs are entitled to damages for Defendants' unfair competition, an accounting of profits made by Defendant on sales of confusingly similar products bearing the Plaintiffs' stylized notched bar with ovals trademark, stylized notched cross with ovals trademark, TWO BAR WEST trademark, and trade dress, and recovery of Plaintiffs' costs of this action.

151.    Defendants' unfair competition with Plaintiffs has been willful and wanton for the purpose of deceiving consumers and injuring the goodwill of Plaintiffs.

152.    Defendants' acts of unfair competition make this an exceptional case entitling Plaintiffs to an award of three times its actual damages pursuant to 15 U.S.C. § 1117(a) and recovery of its reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a).

153.    Defendants' acts of unfair competition are irreparably injuring Plaintiffs' goodwill and eroding Plaintiffs' share of the handmade leather product market, and unless enjoined by this Court, will continue to do so.

154.    Pursuant to 15 U.S.C. § 1116(a), Plaintiffs are entitled to preliminary and permanent injunctive relief to prevent Defendants' continuing acts of unfair competition.

## TRADE DRESS INFRINGEMENT

155.    Plaintiffs repeat and reallege all of the factual allegations contained herein as though the same were set forth again at length herein.

156.     Plaintiffs' trade dress for its leather goods is distinctive and non-functional, and indicates to consumers that Plaintiffs' goods originate from a single source.

157.    Plaintiffs' trade dress has acquired a secondary meaning.

158.    The distinctive and non-functional trade dress of Plaintiffs' purses, leather straps and luggage symbolize the substantial goodwill of Plaintiffs resulting from its significant sales of its high-quality leather products.

159.    Defendants' trade dress for its knock-off products is likely to cause confusion, or to cause mistake, or to deceive as to the origin of their products.

160.    Defendants' use in commerce of confusingly identical overall trade dress for its knock off products are likely to cause consumers to believe that Defendants' knock off products and genuine Two Bar West products come from the same source, or that Plaintiffs or Defendants

sponsors or approves the products of the other, or that Plaintiffs and Defendants are somehow affiliated, connected or associated with one another when in fact they are not.

161. Defendants' use in commerce of a confusingly identical overall trade dress for its knock off leather goods is injuring the goodwill of Plaintiffs and its high-quality genuine Two Bar West leather products.

162. The actions of Defendants constitute trade dress infringement in violation of the Federal Lanham Act, 15 U.S.C. §1125(a)(1)(A).

163. Pursuant to 15 U.S.C. §1117(a), Plaintiffs are entitled to damages for Defendants' trade dress infringement, an accounting of profits made by Defendants on sales of its knock off leather products, and recovery of Plaintiffs' costs of this action.

164. Defendants have willfully and wantonly infringed Plaintiffs' trade dress for its genuine Two Bar West leather goods, and its actions have been calculated to confuse, mislead or deceive consumers, and to injure the goodwill of Plaintiffs.

165. Defendants' acts constitute inducing and contributing to trade dress infringement.

166. The acts of Defendants make this an exceptional case entitling Plaintiffs to an award of three times its actual damages pursuant to 15 U.S.C. § 1117(a) and (b) and recovery of its reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a).

167. Defendants' infringement of Plaintiffs' trade dress is irreparably injuring Plaintiffs' goodwill and eroding Plaintiffs' share of the leather goods market, and unless enjoined by this Court, will continue to do so.

168. Pursuant to 15 U.S.C. § 1116(a), Plaintiffs are entitled to preliminary and permanent injunctive relief to prevent Defendants' continuing trade dress infringement.

## **COPYRIGHT INFRINGEMENT**

169.    Plaintiffs repeat and reallege all of the factual allegations contained herein as though the same were set forth again at length herein.

170.    By its actions alleged above, Defendants have engaged in direct infringement, actively induced infringement and contributed to the infringement of the Copyrights.

171.    Plaintiffs are entitled to an injunction enjoining and restraining Defendants, their officers, agents, employees, and all persons acting in concert with them, from copying the Works, displaying the Works publicly, demonstrating the Works publicly or encouraging third party use and purchase of unlicensed copies of the Works.

172.    Plaintiffs will suffer irreparable harm if Defendants are not enjoined and restrained from infringement.

173.    Defendants' acts constitute inducing and contributing to copyright infringement.

174.    Plaintiffs are further entitled to recover from Defendants the damages they have sustained and will sustain and any gains, profits, and advantages obtained by Plaintiffs as a result of Defendants' acts of infringement alleged above.

175.    At present, the amount of damages, gains, profits, and advantages cannot be fully ascertained by Plaintiffs.

176.    Plaintiffs seek their attorney fees, interest and costs as allowed under the Copyright Laws.

177.    Plaintiffs further seek from Defendants an award of statutory damages, actual damages, attorneys' fees, interest and costs.

## TEXAS TRADEMARK INFRINGEMENT

178.   Plaintiffs repeat and reallege all of the factual allegations contained herein as though the same were set forth again at length herein.

179.   Defendants' acts constitute trademark infringement under the trademark laws of the State of Texas.

180.   Defendants' acts of trademark infringement entitle Plaintiffs to recover its damages and costs of this action, together with an accounting of profits made by Defendants on sales of its services and goods in connection with which Defendants use Plaintiffs' trademarks and trade dress.

181.   The acts of Defendants have been malicious and calculated to injure Plaintiffs.

182.   The willful, wanton and malicious nature of Defendants' conduct entitles Plaintiffs to an award of its reasonable attorney's fees and punitive damages against Defendants.

183.   Defendants' acts constitute inducing and contributing to Texas trademark infringement.

184.   Defendants' infringement of the Plaintiffs' registered stylized notched bar with ovals trademark and stylized notched cross with ovals trademarks and TWO BAR WEST trademark and trade dress are irreparably injuring Plaintiffs' goodwill, and unless enjoined by this Court, will continue to do so.

185.   Further, Plaintiffs may not have an adequate legal remedy in the event money damages cannot properly be calculated.

186.   Under the trademark laws of the State of Texas, Plaintiffs are entitled to preliminary and permanent injunctive relief to prevent Defendants' continuing trademark infringement.

## FEDERAL UNFAIR COMPETITION

187.   The factual allegations of the foregoing paragraphs are repeated and realleged as if fully set forth herein.

188.   The actions of Defendants constitute unfair competition with Plaintiffs in violation of the federal Lanham Act, 15 U.S.C. § 1125(a).

189.   Pursuant to 15 U.S.C. §1117(a), Plaintiffs are entitled to damages for Defendants' unfair competition, an accounting of profits made by Defendants on sales of Defendants' infringing products, and recovery of Plaintiffs' costs of this action.

190.   Defendants' unfair competition with Plaintiffs has been intentional and for the purpose of deceiving consumers and injuring the goodwill of Plaintiffs.

191.   Defendants have misrepresented the nature, characteristics, qualities, or geographic origin of their or Plaintiffs' goods, services, or commercial activities.

192.   Defendants' acts of unfair competition make this an exceptional case entitling Plaintiffs to an award of three times its actual damages pursuant to 15 U.S.C. § 1117(a) and (b) and recovery of its reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a).

193.   Defendants' acts of unfair competition are irreparably injuring Plaintiffs' goodwill and eroding Plaintiffs' share of the market, and unless enjoined by this Court, will continue to do so.

194.   Pursuant to 15 U.S.C. § 1116(a), Plaintiffs are entitled to preliminary and permanent injunctive relief to prevent Defendants' continuing acts of unfair competition.

195.   Plaintiffs are also entitled to prejudgment interest on their recovery.

## COMMON LAW UNFAIR COMPETITION

196. Plaintiffs repeat and reallege all of the factual allegations contained herein as though the same were set forth again at length herein.

197. Defendants' acts constitute unfair competition under the common law of the State of Texas.

198. Defendants' acts of unfair competition entitle Plaintiffs to recover its damages and costs of this action, together with an accounting of profits made by Defendants on sales of their knock off products.

199. Defendants' acts of unfair competition have been malicious and calculated to injure Plaintiffs.

200. The willful, wanton and malicious nature of Defendants' conduct entitles Plaintiffs to an award of its reasonable attorney's fees and punitive damages against Defendant.

201. Defendants' acts constitute inducing and contributing to unfair competition.

202. Defendants' acts of unfair competition are irreparably injuring Plaintiffs' goodwill and eroding Plaintiffs' share of the high end western leather goods, and unless enjoined by this Court, will continue to do so.

203. Further, Plaintiffs may not have an adequate legal remedy in the event money damages cannot properly be calculated.

204. Under the common law of the State of Texas, Plaintiffs are entitled to preliminary and permanent injunctive relief to prevent Defendants' continuing acts of unfair competition.

## COMMON LAW PALMING OFF

205. Plaintiffs repeat and reallege all of the factual allegations contained herein as though the same were set forth again at length herein.

206.     Defendants have palmed off Defendants' goods as originating from or sponsored by Plaintiffs, in violation of the common laws of the State of Texas.

207.     Defendants' acts of palming off entitle Plaintiffs to recover its damages and costs of this action, together with an accounting of profits made by Defendants.

208.     Defendants' palming off of Defendants' goods as originating or sponsored by Plaintiffs have been malicious and calculated to injure Plaintiffs.

209.     The willful, wanton and malicious nature of Defendants' conduct entitles Plaintiffs to an award of its reasonable attorney's fees and punitive damages against Defendants.

210.     Defendants' acts constitute inducing and contributing to palming off.

211.     Defendants' palming off of Defendants' goods as originating or sponsored by Plaintiffs are irreparably injuring Plaintiffs' goodwill and eroding Plaintiffs' share of the leather goods market, and unless enjoined by this Court, will continue to do so.

212.     Further, Plaintiffs may not have an adequate legal remedy in the event money damages cannot properly be calculated.

213.     Under the common law of the State of Texas, Plaintiffs are entitled to preliminary and permanent injunctive relief to prevent Defendant from continuing to palm off.

## FEDERAL FALSE ADVERTISING

214.     Plaintiffs repeat and reallege all of the factual allegations contained herein as though the same were set forth again at length herein.

215.     The statements of Defendants, which appear in emails to potential customers advertising their new line of purses, expressly state that Plaintiffs offer poor customer service and that is the reasoning behind the termination of the relationship between Plaintiffs and Defendants.  These statements are literally false and deceive customers.

216.   The meta tag within Defendants' website www.foxyroxys.com stating they sell Two Bar West purses is expressly false.  Said statements, whether express or implied, have a tendency to deceive consumers.

217.   Said false or deceptive statements are material to the purchasing decisions of consumers in that the statements are causing consumers to purchase Defendants' knock off products because they believe Defendants offer better customer service to retailers.

218.   The statements also lead customers to believe the Plaintiffs' business is suffering due to their lack of customer service which is materially false.

219.   Said false or deceptive statements are injuring the goodwill of Plaintiffs and their high-quality Two Bar West brand leather goods because they are causing consumers to believe that the Plaintiffs' company is deficient in customer service.

220.   The false meta tags in the Defendants' website, www.foxyroxys.com, deceives consumers into believing they sell Two Bar West purses but in reality they only offer an infringing copy of Two Bar West purses.

221.   The actions of Defendants constitute a false or misleading representation of fact in commercial advertising or promotion concerning the nature, characteristics, or qualities of Plaintiffs' company in violation of the federal Lanham Act, 15 U.S.C. §1125(a)(1)(B).

222.   Pursuant to 15 U.S.C. §1117(a), Plaintiffs are entitled to damages for Defendants' false advertisements, an accounting of profits made by Defendants on sales of knock off leather goods, and recovery of Plaintiffs' costs of this action.

223.   Defendants' false advertisement of Plaintiffs' poor customer service has been made willfully and wantonly for the purpose of deceiving consumers, inducing them to purchase from the new supplier, Eternal Perspectives Handbags, in the mistaken belief that they have

better customer service and are superior to Plaintiffs' company, injuring the goodwill of Plaintiffs.

224.   Defendants' acts constitute inducing and contributing to the false advertising.

225.   The acts of Defendants make this an exceptional case entitling Plaintiffs to an award of three times its actual damages pursuant to 15 U.S.C. § 1117(a) and recovery of its reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a).

226.   Defendants' false advertisements are irreparably injuring Plaintiffs' goodwill and eroding Plaintiffs' share of the leather goods market, and unless enjoined by this Court, will continue to do so.

227.   Pursuant to 15 U.S.C. § 1116(a), Plaintiffs are entitled to preliminary and permanent injunctive relief to prevent Defendants' continuing false advertisements.

## COMMON LAW FALSE ADVERTISING

228.   Plaintiffs repeat and reallege all of the factual allegations contained herein as though the same were set forth again at length herein.

229.   Defendants' acts constitute false advertising under the common law of the State of Texas.

230.   Defendants' acts of false advertising entitles Plaintiffs to recover its damages and costs of this action, together with an accounting of profits made by Defendants on sales of their knock off products.

231.   The acts of Defendants have been malicious and calculated to injure Plaintiffs.

232.   The willful, wanton and malicious nature of Defendants' conduct entitles Plaintiffs to an award of its reasonable attorney's fees and punitive damages against Defendants.

233.   Defendants' acts constitute inducing and contributing to the false advertising.

234.    Defendants' false advertisements are irreparably injuring Plaintiffs' goodwill and eroding Plaintiffs' share of the leather goods market, and unless enjoined by this Court, will continue to do so.  Further, Plaintiffs may not have an adequate legal remedy in the event money damages cannot properly be calculated.

235.    Under the common law of the State of Texas, Plaintiffs are entitled to preliminary and permanent injunctive relief to prevent Defendants' continuing false advertisements.

## CIVIL CONSPIRACY

236.    Plaintiffs repeat and reallege all of the factual allegations contained herein as though the same were set forth again at length herein.

237.    Defendants formed a civil conspiracy to commit torts against the Plaintiffs, specifically torts of unfair competition, copyright infringement, trademark infringement, trade dress infringement, false advertising and palming off for the purposes of harming the Plaintiffs and profiting off of the Plaintiffs' workmanship and goodwill.

238.    Defendants Lynn Gerber, William Gerber, and Eternal Perspectives, LLC developed a scheme with non-party Grenemyer to sell "knock off" Plaintiffs goods and intentionally confuse the public through trade dress infringement.

239.    Defendants profits from Defendants' false advertising.

240.    Defendants profit from Grenemyer's relationship with customers in the territory.

241.    Each Defendant is joint and severally liable for the other Defendants within the civil conspiracy.

242.    Plaintiffs are entitled to actual damages and exemplary damages.

## JURY DEMAND

243.    Plaintiffs hereby demand a trial by jury.

**PRAYER**

WHEREFORE, Plaintiffs pray that:

A.    Pursuant to 15 U.S.C. § 1116 and the common and statutory laws of the State of Texas, Defendants, their officers, agents, employees, servants, attorneys, successors, and assigns, and all others in privity or acting in concert or active participation with them, be preliminarily and permanently enjoined from:

1.    Directly or indirectly manufacturing, distributing, advertising, marketing or selling Defendants' copies of Plaintiffs' handbags in any fashion which would state, imply or suggest that such products are Plaintiffs' brand name product or is associated with or comes from the same source as the Plaintiffs' brand;

2.    Inducing or enabling others to directly or indirectly manufacture, distribute, advertise, market or sell one or more infringing goods under Two Bar West Bar logo;

3.    Inducing or enabling others to directly or indirectly manufacture, distribute, advertise, market or sell one or more infringing goods under Two Bar West Cross logo;

4.    Inducing or enabling others to directly or indirectly manufacture, distribute, advertise, market or sell one or more infringing goods under the trade dress of Two Bar West leather goods;

5.    Making or inducing others to make any false, misleading or deceptive statements of fact, or representations of fact in connection with the promotion, advertisement, display, sale, offering for sale, manufacture, production, circulation or distribution of one or more infringing services or

goods in such fashion as to suggest that such infringing services or goods is connected with or associated with or sponsored by Plaintiffs' genuine Plaintiffs' handbags;

6.  Palming off any service or product as a product of Plaintiffs;

7.  Inducing others to palm off any service or product as a product of Plaintiffs;

8.  Making false advertisements, and

9.  Otherwise unfairly competing with Plaintiffs.

B.  Defendants be adjudged to have intentionally infringed and copied Plaintiffs' trademarks and trade dress, and to have manufactured, distributed, marketed, advertised and/or sold infringing goods and falsely designated the origin of, and induced others to have falsely designated the origin of Defendants' goods and be required to pay Plaintiffs:

1.  Its actual damages and any profits of Defendants resulting from said infringement;

2.  Its actual damages and any profits of Defendant resulting from said false designation of origin;

3.  Three times the actual damages of Plaintiffs resulting from said false designation of origin;

4.  Three times the actual damages of Plaintiffs resulting from said infringement;

5.  Its reasonable attorney's fees;

6.  Its costs and expenses; and

7.  Pre-judgment interest;

C.     Defendants be adjudged to have palmed off Defendants' goods as a service or product of Plaintiffs and to have unfairly competed with Plaintiffs and be required to pay Plaintiffs:

      1.   Its actual damages and any profits of Defendant resulting from its palming off of its goods, tortious interference and other acts of unfair competition;

      2.   Its reasonable attorney's fees;

      3.   Its costs and expenses; and

      4.   Pre-judgment interest;

D.     Plaintiffs be awarded punitive damages for Defendants' willful and malicious palming off of Defendants' goods, tortious interference and other acts of unfair competition;

E.     Plaintiffs be granted such other relief as the Court may deem appropriate to prevent the trade and public from deriving any erroneous impression that any goods manufactured, sold, distributed, marketed or otherwise circulated or promoted by Defendant are authorized by Plaintiffs or in any way related to Plaintiffs' handbags or its genuine bar and cross trademarks or trade dress;

F.     Defendants be ordered to deliver up for destruction all products, labels, signs, plates, packages, dyes, wrappers, receptacles and advertisements in its possession or under its control, bearing any words, terms, names, symbols, devices, or any combination thereof, which: simulate, reproduce, counterfeit, copy or colorably imitate Plaintiffs' marks and trade dress in connection with the promotion, advertisement, display, sale, offering for sale, manufacture, production, circulation or distribution of any product in such fashion as to relate or connect, or tend to relate or connect, such service or product in any way to

Plaintiffs; or otherwise misrepresent the source or origin of Defendants' goods; and all plates, molds, matrices and other means of making the same;

G.    Plaintiffs be granted such other relief as the Court may deem appropriate to prevent the trade and public from deriving any erroneous impression concerning the source or origin of Defendants' goods;

H.    Plaintiffs be awarded Plaintiffs actual damages and punitive damages against Defendants in an amount to be determined at trial;

I.Plaintiffs be awarded compensatory damages against the Defendants in an amount to be determined at trial;

J.    Plaintiffs be awarded judgment that the Defendants have been unjustly enriched in an amount to be determined by the Court.

K.    Plaintiffs be awarded a disgorgement of the amount by which Defendants has been unjustly enriched;

L.    Plaintiffs be awarded judgment granting such other relief as the Court may deem appropriate to prevent the trade and public from deriving any erroneous impression concerning the nature, characteristics or qualities of Defendants' goods;

M.    Plaintiffs be awarded judgment ordering Defendants to take corrective action to correct any erroneous impression the public may have derived concerning the nature, characteristics or qualities of Defendants' goods, including without limitation the placement of corrective advertising;

N.    Plaintiffs be awarded judgment granting Plaintiffs such other relief as the Court may deem appropriate to correct any erroneous impression the public may have derived concerning the nature, characteristics or qualities of Defendants' goods;

O.    Plaintiffs be granted such other relief as the Court may deem appropriate to correct any erroneous impression the public may have derived concerning the source or origin of Defendants' goods;

P.    Upon final trial, permanently enjoining Defendants and those acting in concert with them from engaging in the acts of Copyright infringement complained of and;

      1.    Awarding to Plaintiffs statutory and actual damages against Defendants in an amount to be determined at trial;

      2.    Preliminarily and permanently enjoining Defendants, together with their affiliates, agents, servants, employees and all those in privity, concert or participation with them from infringing the copyrights in any manner including reproducing any works based on the Works in copies, preparing any derivative works based on the Works, distributing copies of the Works to the public by sale or other transfer of ownership or by rental, lease or lending, performing the Works publicly, displaying the Works publicly, and encouraging third parties to use the Works;

      3.    Ordering Defendants to immediately turn over any documents, materials, equipment, or other data compilations of any form containing same to Plaintiffs;

      4.    Ordering Defendants to deliver up all documents, materials, equipment, and things in its possession or under its control that are the property of Plaintiffs or which are copies of the work of Plaintiffs;

Q.    Plaintiffs be awarded such other relief as the Court deems just and equitable.

Respectfully submitted,

Charles W. Hanor
Hanor, Lively, & Cernyar, PLLC
Charles W. Hanor, P.C.
750 Rittiman Road
San Antonio, Texas  78209
Telephone:  (210) 829-2002
Fax:  (210) 829-2001


By_____
        Charles W. Hanor
        Texas Bar No. 08928800

        ATTORNEYS FOR PLAINTIFFS,

Friday, February 19, 2010